### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| DR. TIMOTHY L. EAKES Jr., and JEAN C. EAKES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. |
| THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant. | ) ) ) ) | JURY DEMAND |

### PLAINTIFF'S COMPLAINT

Plaintiffs Timothy L. Eakes, Jr., M.D., and Jean C. Eakes bring this Lawsuit ("Complaint") against Defendant the Mutual Life Insurance Company of New York ("MONY") and alleges, upon personal knowledge and upon information and belief as to all other matters, the following:

### JURISDICTION AND VENUE

1.     Jurisdiction over this action is conferred on this Court by 28 U.S.C. § 1332.

2.     This Court has personal jurisdiction over The Mutual Life Insurance Company of New York because it has availed itself of the rights and privileges of this forum and because all events described herein took place in Alabama.

3.     Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) since Defendants do business in this district and a substantial part of the conduct giving rise to the claims occurred in this district.

## PARTIES

4.    Plaintiff Dr. Timothy Eakes is an adult individual over the age of nineteen (19) and resides Pike County, Alabama.

5.    Plaintiff Jean C. Eakes is an adult individual over the age of nineteen (19) and resides Pike County, Alabama.

6.    Defendant The Mutual Life Insurance Company of New York (hereinafter, "MONY") is a life insurance company authorized to do and doing business in the State of Alabama and issued the life insurance policies at issue in this action

## STATEMENT OF THE FACTS

7.    Beginning in 1988, MONY sold the following life insurance policies to Plaintiffs Dr. Timothy Eakes and Mrs. Jean Eakes:

- Policy No. **1312-86-30,** sold and issued on January 17, 1988, for a face amount of $2,000,000
- Policy No. **1313-03-83,** sold and issued on January 17, 1988, for a face amount of $100,000
- Policy No. **1313-03-84,** sold and issued on January 17, 1988, for a face amount of $400,000
- Policy No. **1351-32-93,** sold and issued December 12, 1990, for a face amount of $75,500

8.    These policies were sold to Plaintiffs by or through MONY's authorized representatives.

9.    On each of the respective dates identified in ¶ 7 above, when the foregoing policies were sold and issued to Plaintiffs, the MONY authorized representative (hereinafter, "agent"), represented each respective policy to be a "vanishing premium" life insurance policy.

10.    Vanishing premium life insurance policies are permanent life insurance products designed so that, after a period of initial, high premium payments, the policy's accumulated cash value and dividends cover future premiums.

11.    While sold as a "self-paying" policy, the undisclosed truth is that the premium rarely actually "vanishes"; instead the premium is simply paid by internal cash value growth, making them risky if interest rates fall.

12.    In the late 1990s MONY was sued regarding its vanishing premium insurance products.

13.    A notable class action lawsuit, for example, styled *Goshen v. The Mutual Life Ins. Co. of New York*, was certified in New York state court in the 1995–1996 timeframe alleging that MONY misrepresented that policy premiums would vanish after a set period.

14.    Similarly, MONY was sued in Alabama during the mid-1990s regarding "vanishing premium" insurance fraud. Litigation in both state and federal court, including class actions, alleged that MONY misrepresented how long premiums would need to be paid by insureds before their respective life insurance policies would be "paid up" and no longer require premium payments. See e.g., *The Mut. Life Ins. Co. of New York v. Adams*, 972 F. Supp. 1386 (N.D. Ala. 1997)

15.    In or about June 1996, MONY became aware that the Plaintiffs were considering pursuing litigation concerning policy nos. 1312-86-30, 1313-03-83, 1313-03-84, and 1351-32-93 with respect to the fraudulent misrepresentations made to Plaintiffs that by the year 2000 the foregoing insurance policies would be "paid up" and no longer require premium payments.

16.    In or about June 1996, in Pike County, Alabama, MONY approached the Plaintiffs and represented to them that if the Plaintiffs declined to pursue litigation – either individually or

as class representatives in a class action – MONY would permanently pay the premium payments on policy nos. 1312-86-30, 1313-03-83, 1313-03-84, and 1351-32-93 for the duration of said policies.

17.    Consequently, on or about June 7, 1996, MONY induced Plaintiffs into an agreement wherein after the Plaintiffs made the monthly premium payments in December 1996, MONY would permanently pay the premiums on policy nos. 1312-86-30, 1313-03-83, and 1313-03-84.  Further, on or about June 7, 1996, MONY induced Plaintiffs into an agreement wherein beginning in December 1996 MONY would permanently pay the premiums for policy no. 1351-32-93.

18.    Based on the representations by Defendant MONY, Plaintiffs changed their position and entered into the agreement with Defendant wherein Defendant MONY agreed to permanently pay the premiums on Plaintiffs' policies referenced above.

19.    The June 7, 1996, contractual agreement between Defendant MONY and Plaintiffs stated, in relevant part, that:

> a. MONY "will pay the premiums due" on Policy No. 1351-32-93 on an annual basis beginning December 1996;
>
> b. MONY "will continue to pay the premiums" until accumulated dividends and Growth Option Rider values became sufficient, and "in the event" such values were insufficient, MONY "will make up the difference";
>
> c. MONY similarly agreed to pay the annual premiums on Policies 1312-86-30, 1313-03-83, and 1313-03-84 beginning January 1997;
>
> d. MONY further confirmed that Plaintiffs would have "no further obligation to pay monies for or to pay premiums" on all four policies, provided Plaintiffs did not withdraw or borrow policy values.

20.    Plaintiffs fully performed their obligations under the policies and the June 4, 1996, contractual agreement.

21.     Plaintiffs did not withdraw or borrow policy values in a manner that would relieve MONY of its obligations as stated in the contractual agreement.

22.     Plaintiffs relied on MONY's representations and written promise to pay premiums and structured their financial and insurance planning accordingly.

23.     On several occasions between 1996 and the present, the Plaintiffs inquired with MONY about their policies to, in part, verify that the Defendant was still permanently paying the premiums. For example, on or about January 17, 2017, December 8, 2022, and November 22, 2023, respectively, Defendant MONY represented to the Plaintiffs that the Plaintiffs' premiums were "paid by MONY/MLOA IN ACCORDANCE WITH THE AGREEMENT BETWEEN MONY/MLOA AND THE POLICYHOLDER DATED 6-7-96."

24.     Contrary to its express written promises, however, MONY failed and refused to pay Plaintiffs' premiums as required under the June 4, 1996, contractual agreement and the policies.

25.     On or about February 10, 2026, MONY demanded premium payments from Plaintiffs and/or allowed the policies to lapse, degrade, or incur charges despite its contractual agreement to pay or make up any shortfall.

26.     Defendant MONY's failure to honor its premium-payment obligation constitutes a material breach of contract under Alabama law.

27.     Defendant MONY fraudulently induced Plaintiffs into entering into the June 4, 1996 contractual agreement.

28.     Defendant MONY fraudulently represented to Plaintiffs that their policies' premiums were being paid by MONY in accordance with the agreement between the Defendant and the policyholders dated 6-7-96.

29.    The Defendant MONY had a duty to disclose that Plaintiffs' premium payments were not going to be paid permanently by MONY even if Plaintiffs did not withdraw or borrow policy values in a manner that would relieve MONY of its obligations.

30.    Under Alabama law, a duty to disclose arises from a request for information and one who responds to an inquiry has a duty to speak the *entire* truth.

31.    On or about January 17, 2017, December 8, 2022, and November 22, 2023, respectively, the Plaintiffs contacted Defendant MONY and inquired as to whether Defendant MONY was paying the premiums on the policies referenced herein pursuant to the June 7, 1996 agreement and Defendant MONY had a duty to speak the entire truth and disclose that  Plaintiffs' premium payments were not going to be paid permanently by MONY even if Plaintiffs did not withdraw or borrow policy values in a manner that would relieve MONY of its obligations.

32.    Defendants actively suppressed and concealed from Plaintiffs the true status of their insurance policies.

33.    The representations made by Defendants were false and the Defendants knew they were false at the time they were made.

34.    Plaintiffs discovered the fraud within (2) years of filing this lawsuit.

35.    Defendant entered into a pattern and practice of wrongful and fraudulent conduct, which included the wrongful conduct and fraud practiced on the Plaintiffs.

36.    At all times material hereto, Plaintiffs depended on Defendant to advise them as to insurance matters because of their superior knowledge and position.

37.    The conduct by the Defendant MONY was intentional, gross, wanton, malicious, and/or oppressive.

38.    Defendant MONY entered into a pattern and practice of bad faith, which included the bad faith practiced on the Plaintiff.

## COUNT ONE
## BREACH OF CONTRACT

39.    Plaintiff re-allege paragraphs 7-38 of the Complaint as if set out here in full.

40.    At the aforesaid times and places and upon subsequent claim submissions, Defendant MONY has breached its agreement and contract with Plaintiffs by failing to pay the premium on policy no. 1312-86-30.

41.    As a proximate consequence of the Defendant's actions, plaintiff was injured and have suffered damages, including but not limited to:  Out-of-pocket premium payments; loss of policy value; loss of anticipated insurance benefits; interest charges and penalties; financial insecurity; emotional distress, compensatory damages, consequential damages, interest, equitable relief, and attorneys' fees and litigation costs as allowed by agreement and/or law, and all other remedies available under applicable law.

WHEREFORE, Plaintiff demands judgment against Defendant MONY for compensatory damages in an amount to be determined by a jury and costs.

## COUNT TWO-FRAUDULENT INDUCEMENT

42.    Plaintiff re-allege paragraphs 7-41 of the Complaint as if set out here in full.

43.    On or about June 7, 1996, Defendant MONY fraudulently induced the Plaintiff into an agreement wherein the Defendant MONY would permanently pay the premiums for policy no. 1312-86-30.

44.    Plaintiffs reasonably relied on MONY's representations and written promise to pay premiums and structured their financial and insurance planning accordingly.

45.    The above representations made by the Defendant were false, and the Defendant knew they were false.

46.    As a direct and proximate consequence of this fraudulent conduct, Plaintiffs were injured and damaged as:  Plaintiffs have acquired insurance that was not as represented; Plaintiffs have lost the use and value of their insurance; Plaintiffs have  lost interest on the premium payments made prior to June 1996;  Plaintiffs have lost the use of their money in their insurance policy and the monetary benefits of the policy; Plaintiffs do not have the entire benefits of the  insurance policy that was represented to them; Plaintiffs have lost the affordable insurance coverage that they had with the MONY insurance policy; Plaintiffs have suffered mental anguish and emotional distress and will continue to do so; and Plaintiffs have been otherwise injured and damaged.

WHEREFORE, Plaintiffs demand judgment against Defendant MONY in such an amount of compensatory and punitive damages as a jury deems reasonable, and may award, plus costs.

## COUNT THREE – SUPPRESSION

47.    Plaintiff re-allege paragraphs 7-46 of the Complaint as if set out here in full.

48.    At the aforesaid times and places, Defendant MONY had a duty to disclose to Plaintiffs that Plaintiffs' premium payments were not going to be paid permanently by MONY even if Plaintiffs did not withdraw or borrow policy values in a manner that would relieve MONY of its obligations.

49.    At the aforesaid times and places including on or about January 17, 2017, December 8, 2022, and November 22, 2023, respectively, the Plaintiffs contacted Defendant MONY and inquired as to whether Defendant MONY was paying the premiums on the policies referenced herein pursuant to the June 7, 1996 agreement and Defendant MONY had a duty to speak the entire

truth and disclose that Plaintiffs' premium payments were not going to be paid permanently by MONY even if Plaintiffs did not withdraw or borrow policy values in a manner that would relieve MONY of its obligations.

50.     The Defendant's fraudulent suppressions caused the Plaintiffs to refrain from taking actions that would properly structure their financial and insurance planning to effectively benefit the Plaintiffs' interest and Plaintiffs would have done so had the Defendants disclosed the facts and/or disclosed the truth.

51.     As a proximate consequence of the Defendants' fraudulent conduct, Plaintiff was injured and damaged as alleged in paragraph 46 above.

WHEREFORE, Plaintiffs demand judgment against Defendant MONY in such an amount of compensatory and punitive damages as a jury deems reasonable, and may award, plus costs.

## JURY DEMAND

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.

Respectfully submitted,

  /s/ Larry Golston
W. Daniel "Dee" Miles, III
Larry A. Golston
Leon Hampton, Jr.
Jessica M. Haynes
Attorneys for Plaintiff

OF COUNSEL:
**BEASLEY, ALLEN, CROW, METHVIN,**
**PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160

Phone: (334) 269-2343
Fax:     (334) 954-7555
Dee.miles@beasleyallen.com
Larry.golston@beasleyallen.com
Leon.hampton@beasleyallen.com
Jessi.haynes@beasleyallen.com